# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

JAMES SALGADO

**VERSUS**

**CIVIL ACTION**

**NO. 18-00522-JWD-EWD**

ELECTRIC INSURANCE COMPANY, ET AL

## RULING ON ELECTRIC INSURANCE COMPANY'S
## DAUBERT MOTION IN LIMINE

Before the Court is Electric Insurance Company's ("Defendant" or "Electric") Daubert

Motion in Limine. (Doc. 42.) It is opposed by plaintiff Jamie Salgado ("Plaintiff" or "Salgado").

(Doc. 47.) Defendant filed a reply brief. (Doc. 50.) The Court has carefully reviewed the motion

and associated memoranda, and, for the following reasons, the motion is denied.

### I.    BACKGROUND

This suit for personal injury damages arises out of an automobile accident which

occurred on June 6, 2017, on Interstate 10 in St. Martin Parish. (Doc. 42-1 at 2.)  The facts of this

accident are not important for purposes of this motion. Plaintiff claims injuries to his right wrist

as well as his cervical and lumbar spine. He sought and received medical treatment from Dr.

Charles Schlosser ("Schlosser"), a pain management specialist with Louisiana Medical Clinic

("LMC"). Plaintiff hired Robert Gisclair ("Gisclair"), to develop a life care plan ("Lifecare

Plan") to establish the cost of Plaintiff's future medical care. Dr. G. Randolph Rice, economist,

was hired to calculate the present value of those future medical costs.

In preparing his report, Gisclair reviewed and evaluated Plaintiff's medical records. In

addition, according to Defendant, Gisclair interviewed Plaintiff, interviewed Dr. Joseph Pritchett

("Pritchett"), a chiropractor with LMC who treated plaintiff, and interviewed Schlosser. (Doc.

42-1 at 5.) Gisclair issued his report on March 26, 2020. (Doc. 42-2 at 1–23.) He issued a

supplemental report on May 4, 2020 which did not change his conclusions. (Doc. 42-2 at 24–25.) Gisclair's Lifecare Plan was given to Rice who, on March 27, 2020, using the future medical costs reported by Gisclair, issued his own report calculating the present value of the Lifecare Plan. (Doc. 42-3.) Following the filing of this motion, Schlosser submitted an amended opinion in the form of a declaration regarding Salgado's need for future medical care. (Doc 47 at 7 (citing Doc. 47-2).) The updated opinion was conveyed to Gisclair which prompted updated reports from Gisclair and Rice. (*Id.* (citing Doc. 47-8).)

A central issue in this motion concerns Schlosser's opinion that Salgado will need periodic radiofrequency ablations ("RFAs"), pain management office visits and over-the-counter medication, for the rest of his life to manage the effects of the injury suffered in the accident in question. While Schlosser modified his opinion to reduce the estimated time for future RFAs to once every two years for the next ten years (Doc. 47 at 6-8 (citing Doc. 47-2)), Defendant persists in its challenge. (Doc. 50.)

## II.    ARGUMENTS OF THE PARTIES

In its motion, Electric moves to "limit the opinions" of Rice, Gisclair and Schlosser "relating to the future medical expenses of plaintiff… that Dr. Schlosser contends [Plaintiff] will require for his lifetime, or 35 years into the future…" (Doc. 42 at 1.)

> Electric contends that much of the Lifecare Plan and Dr. Schlosser's opinions regarding Mr. Salgado's future *lifetime* medical care on which the Lifecare Plan is based are speculative at best, by no means inevitable or necessary and are not supported by any scientific or medical research, or any other evidence sufficient to meet the standards for expert opinion under *Daubert* and *Kumho Tire*, or required by F. R. E. Rule 702. More particularly, there is no scientific support for Dr. Schlosser's opinions that Mr. Salgado will undergo bilateral cervical and lumbar RFAs every year for the rest of his life at a total cost of $2,791,799.00, using Dr. Rice's adjustment for present value. Additionally, there is no evidentiary support for the projected need for the cost of quarterly pain management office visits, the use of ibuprofen or the use of Biofreeze for life as is also contained in the Lifecare Plan…

(Doc. 42-1 at 6 (citations omitted).)

In terms of the standard by which this Court should measure the sufficiency of a medical expert's opinions, Electric argues that "Rule 702… contemplates that medical expert opinion enjoy *some level of certainty.*" (Doc. 42-1 at 9 (citing *Black v. Food Lion, Inc.* 171 F.3d 308 (5th Cir. 1999)) (emphasis added).) Additionally, Electric argues "[L]ike Texas, Louisiana also requires the plaintiff to prove that the expenses will be *necessary and inevitable* and the expenses must be established 'with *some degree of certainty.*'" (*Id.* (citing and quoting *Mosbey v. Jefferson Par. Sheriff's Office*, 18-69 (La. App. 5 Cir. 6/27/18), 250 So. 3d 1110 (emphasis added)).)

Schlosser's opinions, argues Electric, fall short of that standard. "… Dr. Schlosser was incapable of forecasting with greater than 50% medical certainty the number of RFAs Mr. Salgado would actually need in the future. Stated another way, Dr. Schlosser could not testify with medical certainty more likely than not how many RFA procedures would be required in Mr. Salgado's future." (*Id.* at 12.) Because the opinions of Gisclair and Rice are ultimately founded on Dr. Schlosser's defective opinion, Electric maintains that these opinions are unsound and should be precluded at trial.

Relying primarily on *Brandner v. State Farm Mut. Auto Ins. Co*., CV 18-982, 2019 WL 636423 at *8-9 (E.D. La. Feb. 14, 2018), Electric contends that Schlosser's opinion regarding Salgado's need for long term and repeated RFAs lacks sufficient scientific testing and support to pass *Daubert* muster. (*Id.* at 12–14.) In addition, Electric argues that the Lifecare Plan's inclusion of periodic pain management visits and over-the-counter medications Ibuprofen and Biofreeze are similarly unsupported. (*Id.* at 15-16.) Finally, scattered throughout the memorandum in support of its motion, Electric attacks the validity of some of Schlosser's assumptions. (*See, e.g.,* Doc. 42-1 at 15 (questioning Schlosser's opinion that Salgado would

3

need to return for follow-up appointments since the medication being suggested, Biofreeze, does not require a prescription).)

Plaintiff counters that Electric's "argument is factually inaccurate and articulates a higher standard that that required by *Daubert* and the Federal Rules of Evidence." (Doc. 47 at 3.) Plaintiff emphasizes that the *Daubert* analysis is a "'flexible' one and 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise and the subject of his testimony.'" (*Id*. at 4 (citing and quoting this Court's opinion in *Pike v. Office of Alcohol and Tobacco Control of the La. Dep. of Revenue*, No. 3:14-cv-511, (M.D. La. Jun. 15, 2016) Doc. 85 at 39 attached as Doc. 47-1).)

Plaintiff emphasizes that Schlosser is well qualified to give the opinions rendered on Plaintiff's future medical needs and, in support of this contention, attaches his declaration (Doc. 47-2) and his curriculum vitae (Doc. 47-3). They show that Schlosser graduated cum laude from the Virginia Commonwealth University where he earned a dual BS degree in Biology and Psychology, and a Master of Science degree in Exercise Science. (Doc. 47-3.) He thereafter got his medical degree from LSU Health Science Center. (*Id*.) He also completed his residency in Physical Medicine and Rehabilitation there. (*Id*.) In 2008, he completed a Fellowship at the LSU Health Science Center in Interventional Pain Management. This included specialized training in radiofrequency ablations. (*Id*.) Schlosser has a double board certification in Pain Management and Physical Medicine and Rehabilitation. (*Id*.) He is an Associate Professor at the LSU Health Science Center/Touro Infirmary. (*Id*.)

Plaintiff maintains that the "science behind RFAs is generally accepted and reliable" (Doc. 47 at 10) and is supported not only by Schlosser's testimony but by "scientific and peer-reviewed literature." (*Id*. at 12.) In support of his contention, he attaches Schlosser's Declaration

4

(Doc. 47-2); The International Spine Intervention Society Practice Guidelines for Spinal Diagnostic and Treatment Procedures, 2nd Edition (Doc. 47-9); a pamphlet about the Spine Intervention Society ("SIS") (Doc. 47-10); excerpts from Schlosser's deposition (Doc. 47-11); and a 2010 article entitled The Efficacy of Repeated Radiofrequency Medial Branch Neurotomy for Lumbar Facet Syndrome published in the Journal of Korean Neurosurgery (Doc. 47-12).

Plaintiff argues that since the time of Electric's motion, Schlosser's opinions have been modified to reflect Plaintiff's improving medical condition. As a result, Schlosser has reduced his estimates for future left sided RFAs to once every two years for the next 10 years, and Gisclair prepared an amended Lifecare Plan to reflect this change. (Doc 47 at 7 (citing to Doc. 47-8).) Rice also updated his report. (*Id*.)

In its reply, Electric contends that Gisclair's updated report "is no more credible or admissible than the original version." (Doc. 50 at 2.) "The timing of the amended Lifecare Plan is as questionable as its contents." (*Id*.) Electric points out alleged inconsistencies between Gisclair's amended Lifecare Plan and a timeline created by Electric. (*Id*. at 2–3.)

Electric repeats its contention that "Louisiana state law recognizes that an award of future medical expenses is always somewhat speculative in nature so that plaintiff is required to prove that the expenses will be necessary and ***inevitable***, and the expenses must be established 'with some degree of medical ***certainty*.'" (*Id*. at 4 (emphasis in original) (again citing *Mosbey v. Jefferson Par. Sheriff's Office*, 18-69 (La. App. 5 Cir. 6/27/18), 250 So. 3d 1110).)

As to the medical literature attached by Plaintiff to his opposition, "Electric questions whether it was properly presented and whether it should be considered by the Court at all, and more importantly, Electric questions Mr. Salgado's interpretation and statement of the cherry picked contents of the excerpts as supporting Dr. Schlosser's opinion." (Doc. 50 at 6.) Electric

accuses Schlosser of providing a "sham affidavit" that is inconsistent with his prior deposition testimony. (*Id*. at 7.)

### III.   *DAUBERT* STANDARD

Pursuant to Federal Rule of Evidence 702, "a witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise" if the rule's preconditions are met. Fed. R. Evid. 702.

Electric's Motion is a *Daubert* challenge based principally on Schlosser's alleged failure to use an accepted methodology and his alleged lack of an adequate factual foundation to support his opinions. *See Daubert v. Merrell Dow Pharmaceuticals, Inc*. 509 U.S. 579 (1993). When *Daubert* is invoked, a district court may, but is not required to, hold a hearing at which the proffered opinion may be challenged. *Carlson v. Bioremedi Therapeutic Sys., Inc*., 822 F.3d 194, 201 (5th Cir. 2016). However, when no hearing is held, "a district court must still perform its gatekeeping function by performing some type of *Daubert* inquiry." *Id*. "At a minimum, a district court must create a record of its *Daubert* inquiry and 'articulate its basis for admitting expert testimony.'" *Id.* (quoting *Rodriguez v. Riddell Sports, Inc.,* 242 F.3d 567, 581 (5th Cir. 2001)).

The role of the trial court is to serve as the gatekeeper for expert testimony by making the determination of whether the expert opinion is sufficiently reliable. As the Fifth Circuit has held:

> [W]hen expert testimony is offered, the trial judge must perform a screening function to ensure that the expert's opinion is reliable and relevant to the facts at issue in the case. *Daubert* went on to make "general observations" intended to guide a district court's evaluation of scientific evidence. The nonexclusive list includes "whether [a theory or technique] can be (and has been) tested," whether it "has been subjected to peer review and publication," the "known or potential rate of error," and the "existence and maintenance of standards controlling the technique's operation," as well as "general acceptance."   The [Supreme] Court summarized:

> The inquiry envisioned by Rule 702 is, we emphasize, a flexible one. Its overarching subject is the scientific validity and thus the evidentiary relevance and reliability-of the principles that underlie a proposed submission. The focus, of course, must be solely on principles and methodology, not on the conclusions that they generate.

*Watkins v. Telsmith, Inc.*, 121 F.3d 984, 988–89 (5th Cir. 1997) (internal citations omitted).

Cases following *Daubert* have expanded upon these factors and explained that *Daubert*'s listing is neither all-encompassing nor is every factor required in every case. *See, e.g.*, *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 142 (1997); *Guy v. Crown Equip. Corp.*, 394 F.3d 320, 325 (5th Cir. 2004). Indeed, courts may look to other factors. *Joiner*, 522 U.S. at 146.

As this Court has explained:

> The admissibility of expert testimony is governed by Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which provide that the court serves as a gatekeeper, ensuring all scientific testimony is relevant and reliable. This gatekeeping role extends to all expert testimony, whether scientific or not. Under Rule 702, the court must consider three primary requirements in determining the admissibility of expert testimony: 1) qualifications of the expert witness; 2) relevance of the testimony; and 3) reliability of the principles and methodology upon which the testimony is based.

*Fayard v. Tire Kingdom, Inc.*, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010) (internal citations omitted) (citing *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999)).

This Court has broad discretion in deciding whether to admit expert opinion testimony. *See, e.g.*, *Joiner*, 522 U.S. at 138–39 (appellate courts review a trial court's decision to admit or exclude expert testimony under *Daubert* under the abuse of discretion standard); *Watkins*, 121 F.3d at 988 ("District courts enjoy wide latitude in determining the admissibility of expert testimony."); *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998) ("Trial courts have 'wide discretion' in deciding whether or not a particular witness qualifies as an expert under the Federal Rules of Evidence.").

"Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011) (citing Fed. R. Evid. 702 Advisory Committee Note (2000 amend.)). Further, as explained in *Scordill v. Louisville Ladder Grp., L.L.C.*:

> The Court notes that its role as a gatekeeper does not replace the traditional adversary system and the place of the jury within the system. As the *Daubert* Court noted, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." The Fifth Circuit has added that, in determining the admissibility of expert testimony, a district court must defer to "'the jury's role as the proper arbiter of disputes between conflicting opinions. As a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration.'"

2003 WL 22427981 at *3 (E.D. La. Oct. 24, 2003) (Vance, J.) (internal citations omitted) (relying on, among others, *Rock v. Arkansas*, 483 U.S. 44, 61 (1987), and *United States v. 14.38 Acres of Land, More or Less Sit. In Leflore Cty., Miss.*, 80 F.3d 1074, 1077 (5th Cir. 1996)).

The Supreme Court has recognized that not all expert opinion testimony can be measured by the same exact standard. Rather, the *Daubert* analysis is a "flexible" one, and "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho*, 526 U.S. at 150, *cited with approval in Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002).

## IV.   DISCUSSION

### A.  Plaintiff's Burden of Proof Regarding Future Medical Expenses

In a diversity case such as this one, the Court must apply Louisiana law. *Jorge-Chavelas v. Louisiana Farm Bureau Cas. Ins. Co.*, 917 F.3d 847, 850 (5th Cir 2019) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938)). Where the Louisiana Supreme

8

Court has spoken on an issue of Louisiana law, this Court is bound to follow it. "Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state. And whether the law of the state shall be declared by its Legislature in a statute or by its highest court in a decision is not a matter of federal concern." *Erie R. Co. v. Tompkins*, 304 U.S. at 78, 58 S. Ct. at 822. *See also* § 4507 The Erie Doctrine—Determining the Content of the Applicable State Law, 19 Fed. Prac. & Proc. Juris. § 4507 (3d ed.) It is only "the absence of a controlling high court decision [which] requires us to make an '*Erie* guess' about Louisiana law," *Jorge-Chavelas*, at 850, and in that case, a Federal Court is 'not strictly bound' by decisions of Louisiana's intermediate courts." *Id*. at 850–51 (quoting *Transcon. Pipe Line Corp. v. Transp. Ins. Co*., 953 F.2d 985, 988 (5th Cir. 1992)).

Underlying Electric's arguments is its repeated insistence that in order to recover future medical expenses, Louisiana law requires Plaintiff to prove that such expenses will be "necessary and inevitable" and must prove their necessity and inevitability to "some degree of certainty," or to "some degree of medical certainty". (*See, e.g.,* Doc. 42-1 at 6, 9-10, 12, 13 (citing *Mosbey v. Jefferson Par. Sheriff's Office*, 18-69 (La. App. 5 Cir. 6/27/18), 250 So.3d 1110, and *Brandner v. State Farm Mut. Auto Ins. Co.*, CV-18-982, 2019 WL 636423 (E.D. La. Feb. 14, 2019)).) A review of Louisiana case law makes clear that, despite the occasional use of phrases like "some degree of certainty," the standard of proof is, plainly and simply, "more probable than not." Furthermore, while a plaintiff must prove that the future medical treatment is reasonably necessary, a medical treatment's "inevitability" need not be shown.

Like the present case, *Jordan v. Travelers Ins. Co*., 257 La. 995, 245 So. 2d 151 (1971), involved a plaintiff who claimed damages allegedly arising from injuries caused by an automobile accident. Pertinent to the issue here, plaintiff claimed damages for future medical

expenses. In affirming the district court's refusal to award damages for future medical expenses, the Court of Appeal stated: "With respect to plaintiff's claim for future medical expenses, we also conclude that plaintiff has failed to show with *reasonable certainty* what these expenses will be." *Jordan v. Travelers Ins. Co.*, 231 So. 2d 678, 687 (La. Ct. App.), *writ issued*, 256 La. 65, 235 So. 2d 95 (1970), *and writ denied*, 256 La. 68, 235 So. 2d 96 (1970), *amended by* 257 La. 995, 245 So. 2d 151 (1971) (emphasis added). The Supreme Court reversed the Court of Appeal on this issue and, as to the plaintiff's claim for future medical expenses and future loss of earnings, the Court wrote:

> In the present instance, the court of appeal held that the loss of earnings and the future medical expenses were not proved with sufficient certainty. It therefore denied recovery; even though it also held that the evidence did prove the plaintiff to be permanently and totally disabled by a mental condition, and that this disability had been caused or aggravated by the defendants' driver's tort.

> In Louisiana tort cases, the plaintiff must prove by a preponderance of the evidence both the negligence of the defendant and the damages caused by the latter's fault; but proof need be only by a preponderance of the evidence, not by some artificially created greater standard. This burden of proof may be met by either direct or circumstantial evidence.

> In describing burden of proof, the courts sometimes speak of proof to a 'reasonable certainty' or to a 'legal certainty'; or of proof by evidence which is of 'greater weight' or 'more convincing' than that offered to the contrary; or (in the case of circumstantial evidence) of proof which excludes other reasonable hypotheses than the defendant's tort with 'a fair amount of certainty'. Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not.

> See: Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Perkins v. Texas and New Orleans Railroad Co., 243 La. 829, 147 So.2d 646 (1962). See also: Sanders, The Anatomy of Proof in Civil Actions, 28 La. L. Rev. 297 (1968); James, Civil Procedure, Section 7.6 at pp. 250—51 (1965); Prosser on Torts, Section 41 at pp. 245—46 (3d ed., 1964); McCormick on Evidence, Section 319 at pp. 676—77 (1954); Malone, Louisiana Workmen's Compensation, Section 252 at pp. 293—94 (1951).

*Jordan v. Travelers Ins. Co*., 257 La. 995, 1007–08, 245 So. 2d 151, 155–56 (1971).

In reversing the decision of the district court and Court of Appeal to award no future medical expenses, the Court applied the rule it had set out.

> In our opinion, this evidence proves that, more probably than not, the plaintiff Jordan will have to be placed in a nursing home from time to time due to his tort-caused mental condition. On the other hand, the evidence does not preponderantly show that this is necessary other than intermittently. Since there is a legal right to recovery, although the damages cannot be exactly calculated, an award of seven thousand five hundred dollars for this loss is appropriate under the circumstances, including the plaintiff's twelve-year further life expectancy.

*Id*. at 1012–13, 245 So. 2d at 157.

More recently, the Court in *Menard v. Lafayette Ins. Co*, 09-1869 (La. 3/16/10), 31 So. 3d 996, 1006, while again referring to "some degree of certainty," reiterated that "[t]he proper standard for determining whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence the future medical expense will be medically necessary." (citation omitted). It appears to this Court that the phrase "some degree of certainty" is a non-sequitur (since a proposition is either certain or not),[1] seems to impose a higher standard than "more probably than not", and, at the very least, is potentially confusing. But again, the apparent riddle is solved by reference to *Jordan*: "Whatever the descriptive term used, however, proof by direct or circumstantial evidence is sufficient to constitute a preponderance, when, taking the evidence as a whole, such proof shows that the fact or causation sought to be proved is more probable than not." *Jordan*, 257 La. at 1008, 245 So. 2d at 155.

The holding of *Jordan* that a plaintiff may satisfy his burden of establishing entitlement to future medical expenses by proving, "more probably than not," that they will be incurred (and not requiring any "artificially created greater standard,") *id*. at 1008, is also supported by the following: Frank L. Maraist, *Civil Procedure*, *in* 1 *Louisiana Civil Law Treatise* § 11:7 Evidence

---

[1] Webster's Dictionary defines the word "certain," in relevant part, as "fixed, settled" or "known or proven to be true." Merriam-Webster's Dictionary (2020), available at https://www.merriam-webster.com/dictionary/certain.

at Trial (2d ed. 2008) ("In civil actions, the proponent of a cause of action or defense generally must establish the material facts to support it by a preponderance of the evidence, i.e., by a standard of more probable than not."); H. Alston Johnson, III, *Civil Jury Instructions*, *in* 18 *Louisiana Civil Law Treatise* § 2:4 Introductory closing instructions—Evidence and proof (3d ed. 2011) ("As I mentioned to you at the start of the trial, the plaintiff has to prove his case by a preponderance of the evidence. This means that the plaintiff must convince you that when you have considered all of the evidence, the facts that plaintiff is trying to prove are more probably true than not true."); Billie Colombaro, John W. deGravelles, & David R. Frohn, *Louisiana Civil Trial Procedure* § 5:20 Burden of persuasion—The preponderance of the evidence standard (2020); *cf.* Fifth Circuit Pattern Jury Instruction 3.2 ("Plaintiff [name] has the burden of proving [his/her/its] case by a preponderance of the evidence. To establish by a preponderance of the evidence means to prove something is more likely so than not so.").

The next issue is whether Plaintiff must prove by a preponderance of the evidence that the future medical expenses are "necessary and inevitable" as suggested by Electric. The genesis of this phrase seems to be a per curium grant of a writ application by the Louisiana Supreme Court in *Stiles v. K Mart Corp.*, 597 So. 2d 1012, 1013 (La. 1992). The entirety of the court's opinion follows:

> The application is granted.
>
> When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. La. Code of Civ. Proc. art. 2164.
>
> The judgment of the court of appeal as to future medical expenses is set aside, and the case is remanded to the court of appeal to fix an award for future medical

12

expenses which the medical evidence established that plaintiff, more probably than not, will be required to incur.

*Id*.

There are two points of particular note as they affect the issue under consideration. First, and most importantly, this language does not pretend to set the standard for a plaintiff's burden of proof to recover future medical expenses. Rather, the Court states that a plaintiff is *relieved* of his burden to show the value of future medical expenses through expert testimony if he has shown that they are "necessary and inevitable" and the record otherwise provides supporting evidence of "a minimum amount that reasonable minds could not disagree will be required." *Id*. *See also Hanks v. Seale*, 2004-1485 (La. 6/17/05), 904 So. 2d 662, 672 ("In such cases, a jury's award of future medical costs will not be overturned merely for the lack of specific expert medical testimony on delineating the malpractice victim's future medical costs. *See Stiles*, 597 So.2d at 1013.") Here, of course, there is expert testimony on the issue of future medical expenses. Thus, this language does not, as Electric suggests, set the requirement of proof for Plaintiff in this case. Second, the decision reaffirms a plaintiff's actual burden, i.e. to prove the "expenses which the medical evidence established that plaintiff, more probably than not, will be required to incur." *Id*.

In *D'Ambrosia v. Lang*, 07-298 (La. App. 5 Cir. 4/29/08), 985 So. 2d 800, 815, the Court considered the meaning of the phrase "necessary and inevitable" in the context of what a plaintiff must prove to recover future medical expenses:

USAA argues Peter must prove the surgery was "inevitable," relying on *Gunn v. Robertson*, 01–347 (La. App. 5 Cir. 11/14/01), 801 So.2d 555, 564, writs denied, 02–0170, 02–0176 (La. 3/22/02), 811 So.2d 942. In *Gunn*, this court relied on *Hurts v. Woodis*, 95–2166 (La. App. 1 Cir. 6/28/96), 676 So.2d 1166, 1177, which stated that the plaintiff must prove that these expenses will be necessary and inevitable. The statement in *Gunn* stems from a pronouncement in the 1992 Louisiana Supreme Court case of *Stiles v. K Mart Corp.*, 597 So.2d 1012 (La.1992) (per

curiam). Recently, this court explained that the burden of proving entitlement to future medical expenses is by a preponderance of the evidence. *Dufrene v. Gautreau Family*, LLC, 07–467 (La. App. 5 Cir. 2/22/08), 980 So.2d 68, 82.5 The court cited *Stiles*, 597 So.2d at 1013, for the following proposition:

> When the record establishes that future medical expenses will be necessary and inevitable, the court should not reject an award of future medical expenses on the basis that the record does not provide the exact value of the necessary expenses, if the court can examine the record and determine from evidence of past medical expenses and other evidence a minimum amount that reasonable minds could not disagree will be required. La. C.C.P. art. 2164.

By reaffirming the "preponderance of evidence" standard, *Dufrene* did not indicate that the Louisiana Supreme Court in *Stiles* intended to change the standard for determining entitlement to future medical expenses.

Thus, we hold that the plaintiff bears the burden of proving entitlement to future medical expenses by a **preponderance** of the evidence.

*Id*.

Despite the Louisiana Fifth Circuit's clarification of this issue in *D'Ambrosia*, *supra*,

(and its specific disavowal of *Gunn v. Robertson, supra*, on this point), a different panel, without

overruling or even referring to *D'Ambrosia,* stated:

> In order to recover future medical expenses, the plaintiff must prove the expenses will be necessary and inevitable. *Gunn v. Robertson*, 01-347 (La. App. 5 Cir. 11/14/01), 801 So.2d 555, 565, *writ denied*, 02–170, 02176 (La. 3/22/02), 811 So.2d 942. Future medical expenses must be established with some degree of certainty and must be supported with medical testimony and estimation of probable costs.

*Mosbey v. Jefferson Par. Sheriff's Office*, 18-69 (La. App. 5 Cir. 6/27/18), 250 So. 3d 1110,

1120.

In *Hoskin v. Plaquemines Par. Gov't*, the Louisiana Fourth Circuit Court of Appeal

acknowledged the confusion and dueling standards created by *Stiles'* "necessary and inevitable"

language but, turning to its prior decision in *Rice v. ABC Ins. Co.*, 95–2008, p. 3 (La. App. 4 Cir.

4/3/96), 672 So. 2d 1109, 1112, *writ denied*, 96–1113 (La. 6/7/96), 674 So. 2d 971, stated,

14

We follow the approach in *Rice*, which is in accord with the Supreme Court's intent expressed in *Stiles*. Rather than adopt one paragraph of Stiles or the other, *Rice* recognized that the Supreme Court intended that the standard of proof be preponderance of the evidence and that evidence presented must indicate that the future medical expenses would be medically necessary. *Rice* does not refer to "inevitable," which we reject. Thus, we hold that the proper standard to determine whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary.

*Hoskin v. Plaquemines Par. Gov't*, 97-61 (La. App. 4 Cir. 12/1/97), 703 So. 2d 207, 210–11, *writ denied*, 98-0270 (La. 4/3/98), 717 So. 2d 1129, *and writ denied*, 98-0271 (La. 4/3/98), 717 So. 2d 1129.

This Court agrees with the Courts in *D'Ambrosia* and *Hoskin* and rejects "inevitable" as a requirement of proof for future medical expenses. The word "inevitable" (like the word "certain"), has a fixed and unambiguous meaning: i.e. "incapable of being avoided or evaded." *Inevitable*, Merriam-Webster's Dictionary (2020), available at https://www.merriam-webster.com/dictionary/inevitable. To impose a requirement that a plaintiff prove that his medical expenses will be "inevitable" flies in the face of his actual burden, i.e. proving by a preponderance of the evidence that the future medical expenses are medically necessary." *D'Ambrosia*, at 815; *Hoskin*, at 210-11. See also Alston Johnson's Civil Jury Instructions, which correctly states the law on the issue of what a plaintiff must prove by a preponderance of the evidence in order to recover past and future medical expenses.

In determining any award that you might make for past or future medical expenses, you should consider the evidence, and the opinions of expert witnesses, to decide the reasonable value or expense of medical, nursing and hospital care and treatment which was or will be *reasonable and necessary* for plaintiff's condition.

H. Alston Johnson, III, *Civil Jury Instructions*, *in* 18 *Louisiana Civil Law Treatise* § 18:5 (3d ed. 2020) (emphasis added). *See also, e.g., Wendel v. Travelers Ins. Co*., 14-2 (La. App. 4 Cir. 10/8/14), 151 So. 3d 828, 836, *writ denied*, 14-2346 (La. 2/6/15), 158 So. 3d 818 ("In order for

15

plaintiff to receive an award for future medical expenses, he must prove they are medically necessary by a preponderance of the evidence."); *Sadler v. Int'l Paper Co*., No. 09-1254, 2014 WL 1217954, at \*8 (W.D. La. Mar. 24, 2014) (citing *Hoskin*, 703 So. 2d at 211) ("To recover future medical expenses, a plaintiff must offer 'proof by a preponderance of the evidence that the future medical expenses will be medically necessary.'"); *Gaunt v. Progressive Sec. Ins. Co*., 11-1094 (La. App. 4 Cir. 6/8/12), 92 So. 3d 1250, 1272, *writ denied*, 12-1646 (La. 11/16/12), 102 So. 3d 33, *and writ denied*, 12-1792 (La. 11/16/12), 102 So. 3d 37 ("The proper standard for the trial court's determination of whether a plaintiff is entitled to future medical expenses is proof by a preponderance of the evidence that the future medical expenses will be medically necessary.").

But regardless of the precise phraseology of Plaintiff's burden of proof on the issue of future medical expenses, the Court finds that Schlosser's opinions pass *Daubert* muster.

### B.  Schlosser's Methodology and Foundation

Electric complains that Schlosser's opinion regarding the need for future medical care fails the *Daubert* challenge because there "is neither scientific or medical research, nor studies which support the opinion of Dr. Schlosser" that RFA's will be needed for Plaintiff for the duration of his lifetime. (Doc. 42-1 at 12.)

Specifically, Electric argues that

there is no scientific support for Dr. Schlosser's opinions that Mr. Salgado will undergo bilateral cervical and lumbar RFAs every year for the rest of his life… [and] there is no evidentiary support for the projected need for the cost of quarterly pain management office visits, the use of ibuprofen or the use of Biofreeze for life…

(Doc. 42-1 at 6.)

Ordinarily there is no requirement that a treating physician's opinions be supported with peer-reviewed research or articles as long as they are based on adequate education, training, experience and reasoned medical analysis.[2]

> A treating physician often forms an opinion about the cause of an injury or the extent to which it will persist in the future based upon his examination of a patient. Courts therefore have allowed doctors to "testify at trial concerning any medical opinions that [they] formed during the course of ... treatment with respect to [plaintiff's] injuries, their cause, and the extent of [plaintiff's] disability."

> Dr. Brown bases his opinions on a range of factors, including his education, training, extensive clinical experience in treating patients, and his care and treatment of plaintiff. Dr. Brown has testified that, in addition to his clinical experience, he continues to review the current literature on physical medicine and electromyography. As to defendant's argument that Dr. Brown did not provide the specific articles supporting his opinions, his opinions appear to be based on reasoned medical analysis. Further, the lack of the specific articles is not fatal and goes to the weight, not the admissibility, of his testimony, as an expert may base his opinion on experience alone. Defendant's motion, as to Dr. Brown, therefore must be denied.

*Cohen v. Lockwood*, No. 02-2246-JPO, 2004 WL 763961, at *3 (D. Kan. Apr. 8, 2004); *see also Barnett v. Nat'l Continental Ins. Co.*, No: 3:17-CV-153, 2019 WL 126732, at *4 (M.D. La. Jan. 8, 2019).

This was also the conclusion reached in *Sigsby v. Cardinal Logistics Mgmt. Corp.*, No. 18-1597, 2019 WL 568671 (E.D. La. Feb. 12, 2019). There, the plaintiff challenged defendant's expert medical doctor under "Daubert and Rule 702 standards because, in his deposition, Dr. Todd could not articulate any evidence or peer-reviewed studies supporting

---

[2] This is, at least in part, the reason treating physicians are not subject to the report requirement of Fed. R. Civ. P. 26(a)(2)(B). "Treating physicians commonly consider the cause of any medical condition presented in a patient, the diagnosis, the prognosis and the extent of disability, if any, caused by the condition or injury. Opinions as to these matters are encompassed in the ordinary care of a patient and do not subject the treating physician to the report requirement of Rule 26(a)(2)(B). Numerous other courts who have considered this issue have reached similar conclusions." *Shapardon v. W. Beach Estates*, 172 F.R.D. 415, 416–17 (D. Haw. 1997).

his assertion that RFAs are typically only administered, at most, five to seven times." *Id*. at *4. In rejecting this contention, the court stated:

> [Plaintiff] requires too much: although he is permitted to question the foundation of Dr. Todd's opinions and shed doubt on the validity of his testimony, such challenges are better suited for cross-examination during trial. Dr. Todd has not opined that treating Sigsby's pain with more than seven RFAs would be inappropriate or that more than seven RFAs have never before been prescribed a patient, and Sigsby is free to offer conflicting testimony from his treating physician or expert witnesses. Dr. Todd's opinions are based on his *personal knowledge, training, and experience, all of which serve as an adequate and reliable basis for his testimony. See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("Rule 702 expressly contemplates that an expert may be qualified on the basis of experience.").

*Id.* (emphasis added).

However, Electric again points to *Brandner* in which the District Court excluded Schlosser's and another physician's opinions regarding the need for a lifetime of future RFAs because "Plaintiff has not met his burden of establishing the doctors' experience qualifies them to offer their opinion. Neither has Plaintiff shown that the doctors' opinions are supported by peer-reviewed studies, the results of which have gained general acceptance in the scientific community." *Brandner*, 2019 WL 636423, at *8-9.[3]

Plaintiff counters that, Schlosser's opinions regarding long-term use of RFSs are based on and supported by accepted medical literature (Doc. 47 at 8–10 (citing to Schlosser's declaration, Doc. 47-2 and Ex. 47-9–47-12)) but, in any event, based on a recent visit and Plaintiff's improved condition, Schlosser has modified his opinion to call for only one to two RFAs per year for the next ten years. (*Id*. at 7 (citing Doc. 47-2).) Consequently, Gisclair's and Rice's reports were also modified to reflect this change. (*Id*. (citing to Doc. 47-8).) Finally,

---

[3]   The *Brandner* court did permit Schlosser to testify, "based on [his] personal knowledge and experience treating patients, and the studies cited examining RFA administration for seven to ten years that it is more probable than not that Plaintiff will need and will benefit from up to ten annual RFAs." *Brandner,* 2019 WL 636423, at *8.

pointing the Court to *Tyson v. Nat'l Specialty Ins. Co.*, No. 17-1427, 2020 WL 3547952, at \*5

(W.D. La. June 29, 2020), Plaintiff argues that *Brandner* is distinguishable since here, as in

*Tyson*, Schlosser's opinions are supported. (*Id*. at 18–19.)

In its Reply, Electric questions whether the medical literature was properly presented and

whether it should be considered by the Court at all. (Doc. 50 at 6–7.) Electric accuses Schlosser

of providing a "sham affidavit" that is inconsistent with his prior deposition testimony. (*Id*. at 7.)

First, the Court finds that Schlosser's declaration and supporting literature was properly

presented and not a 'sham'. Electric issued a *Daubert* challenge to Schlosser's testimony as

being unsupported and, in response, Plaintiff provided Schlosser's declaration and additional

support for his opinions. Furthermore, the Court finds that Schlosser is highly qualified and

experienced in the area about which he is to testify. Schlosser graduated cum laude from the

Virginia Commonwealth University where he earned a dual BS degree in Biology and

Psychology, and a Master of Science degree in Exercise Science. (Doc. 47-3.) He thereafter got

his medical degree from LSU Health Science Center. (*Id.*) He also completed his residency in

Physical Medicine and Rehabilitation there. (*Id*.) In 2008, he completed a Fellowship at the LSU

Health Science Center in Interventional Pain management which included specialized training in

radiofrequency ablations. (*Id.*) Schlosser has a double board certification In Pain Management

and Physical Medicine and Rehabilitation. (*Id.*) He is an Associate Professor at the LSU Health

Science Center/Touro Infirmary. (*Id.*)

In his declaration, Schlosser explains that, because of nerve regeneration following a

RFA, the RFA "can be effective anywhere between 6 months to 1 and a half years." (Doc. 47-2

at 2.) "As the nerve branch regenerates, the transmission of pain signals begins to resume." (*Id*.

at 3.) "Therefore, since Salgado has permanent pain, it is a possibility that he may need repeat

ablations indefinitely as the nerve branches will eventually regrow, returning Salgado's pain

transmissions." (*Id*.)

Schlosser's declaration is supported not only by his education, training and experience

but by the literature which he references in his declaration (Doc. 47-2 at 2–3) and which is

attached thereto. (Docs. 47-9–47-12.)  The supporting literature includes, but is not limited to,

Practice Guidelines for Spinal Diagnostic and Treatment Procedures of the International Spine

Intervention Society which includes the following excerpts relevant to Electric's challenge.

> Radiofrequency medial branch neurotomy is not curative. It does not resolve the lesion that causes the pain from the zygapophysial joints. It does not permanently destroy the medial branches of the dorsal rami. The cell bodies of these nerves remain intact, and the nerves regenerate.
>
> As they regenerate, the pain can recur. Nevertheless, on average, patients can expect a period of about 400 days of complete relief of pain following an initial, successful neurotomy….
>
> […]
>
> There appears to be no limit to the number of times the neurotomy might be successfully repeated.

*Practice Guidelines for Spinal Diagnostic and Treatment Procedures of the International Spine*

*Intervention Society* (Second Edition) (Ex. A, Doc. 47-2 at 10.)

Electric is, of course, free to disagree with these conclusions and challenge them by way

of vigorous cross examination and the introduction of its own expert evidence. Any alleged

inconsistencies between his declaration and deposition testimony can be similarly explored and

challenged. But for purposes of the present *Daubert* motion, the Court finds that Schlosser's

challenged opinions regarding the need for future RFAs (whether in the original or modified

reports) and the downstream opinions of Gisclair and Rice, utilize an appropriate methodology

and are adequately supported.

The Court disagrees with *Brandner's* premise that Schlosser's expert education, training and experience alone are inadequate to support his opinions regarding Plaintiff's need for future RFA treatment. *See, e.g., Sigsby,* at *4. But, in any event, *Brandner*, upon which Electric so heavily relies, is readily distinguishable. The present case is much like the case of *Tyson v. National Specialty Insurance Co.*, No. 17-1427, 2010 WL 3547952 (W.D. La. June 29, 2020) where the court stated:

> The Court agrees with Plaintiffs that *Brandner* is easily distinguished from the instant case based on the quality of the evidence this Court has before it to decide the *Daubert* issue versus the quality of evidence that was presented to the *Brandner* court. Furthermore, "[a]s a general rule, questions relating to the bases and sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration." *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987).

*Tyson v. Nat'l Specialty Ins. Co.*, No. 17-1427, 2020 WL 3547952, at *5 (W.D. La. June 29, 2020). Such is the case here.

## V.    CONCLUSION

Accordingly, for the foregoing reasons, Electric Insurance Company's Daubert Motion in Limine (Doc. 42) is DENIED.

Signed in Baton Rouge, Louisiana, on October 29, 2020.

_____

**JUDGE JOHN W. deGRAVELLES**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**